THE UNION LAND & BUILDING CO. *v.* THE CITY OF
YOUNGSTOWN.

*Municipal corporations—Injunction against removal of steps in
street—Adverse possession by abutting owner—City to es-
tablish title to ground before removing steps.*

1. A municipal corporation, which is threatening to remove
the steps to the entrance of a building located upon a lot
abutting upon a public street, because it claims that the
steps extend beyond the lot line into the street, may be
enjoined from removing them at the suit of the lot
owner when the steps have been in their present loca-
tion for more than twenty-one years and their removal
would destroy the occupancy of the building as it has
been enjoyed, the municipality having failed to prove
that the ground occupied by the steps is within the dedi-
cated street boundary.

2. Under such condition, before the municipal corporation
can remove the steps, it must establish, by a law action,
its right to the possession of the ground occupied by
the steps.

(Decided March 23, 1923.)

APPEAL: Court of Appeals for Mahoning county.

*Messrs. Kennedy, Manchester, Conroy & Ford,*
for plaintiff.

*Mr. J. H. Leighninger,* city solicitor, for de-
fendant.

POLLOCK, J. This action comes into this court
on appeal, and was submitted on the pleadings,
the evidence, and the argument and briefs of coun-
sel.

Plaintiff in its petition says that it is the owner
of certain lands located on the northeast corner
of the Public Square in the city of Youngstown;

that a portion of that land is known as city lot
Number 389; that upon the lot it has constructed
a large three-story building, which is used for
office and other purposes and known as the Realty
Guarantee & Trust Building; that this lot fronts
west on Wick avenue, a public street in the city,
extending north from the Public Square; and that
a portion of the south side of this lot fronts on
the Public Square.

Plaintiff further says that on the westerly
side of the land, and fronting on Wick avenue, it
has constructed steps leading into the second floor
of the building, and also steps into the basement;
that at the corner or intersection of Wick avenue
and the Public Square it has steps leading into the
first floor of the building; that on the southerly
side of the lot, and fronting on the Public Square,
it has constructed steps into the basement of the
building; and that the basement is improved to
take care of public patronage.

Plaintiff also says that the building was con-
structed back of the line of the lot, and back of
the lot line of the land owned by it; that all of
said steps are entirely on the private land of the
plaintiff; and that the steps are necessary to pro-
vide an entrance to the first and second floors of
the building, and also to the basement thereof.

The plaintiff further says that it and its prede-
cessors in title have had open, notorious and ad-
verse use and possession of the land occupied by
such steps for a period of thirty years. Plaintiff
alleges that defendant threatens to remove the
steps, and to destroy the same, which would work
irreparable damage to plaintiff for which it has
no adequate remedy of law.

Plaintiff prays that defendant may be enjoined from interfering in any way with the steps and openings into the building, and for such other relief as may be just and equitable.

To this petition the city of Youngstown filed an answer admitting the corporate capacity of the city, and that the defendant, George L. Oles, is mayor thereof. It then denies every other allegation contained in the petition.

All of the steps referred to in the petition are constructed of large stone block. The first floor of the building is about five feet above the street sidewalk. A large brass railing, supported by posts of like material, surrounds the part of the building fronting on Wick avenue and the Public Square, except that part occupied by the steps. This railing is located on a line flush with the foot of the steps.

It appears from the evidence that this part of the city was platted, and the plat recorded by John Young, in August, 1802; that he laid out the lots and streets from a point a hundred and fifty feet west of Hazel street easterly to a hundred and fifty feet east of Walnut street. The plat was bounded on the north by North street and on the south by South street; Federal street was a hundred feet in width. Market street, which then included not only Market street on the south of the square, but what is now known as Wick avenue on the north of the Public Square, was laid out a hundred feet wide; and the Public Square was two hundred and fifty feet by four hundred feet.

From the testimony of the engineers it appears that this plat, which dedicated to the public use

the square and streets named, located the square and streets something like sixty-four feet west of their present location.

The Young plat is the only paper title which the city has to the Public Square and these streets. It will be seen that the paper title of the city to the Public Square and Wick avenue would place the eastern boundary of both something like sixty-four feet west of their present location.

The building now on plaintiff's property was erected in 1886. The steps of the building which are now in controversy in this action and also some kind of a railing around the building were constructed on the south and west side thereof, in the present location of the railing, at the time the present building was erected.

The plaintiff has continued from that time until the bringing of this action in the possession of the ground in dispute. It does not appear from the evidence whether prior to the erection of the present building the ground now covered by these steps was included within the building theretofore on this property, or whether this ground was occupied in any way by the owner of lot No. 389.

The city produced evidence tending to prove that in addition to the strip in dispute the plaintiff is in possession of the full number of feet in length and breadth of Lot 389, as appears from the Young plat. It further appears that measuring from the west side of Wick avenue, a hundred feet east, will include the ground in dispute, now occupied by the steps and railing, and that measuring from the Public Square north the number of feet designated for a street by the Young plat will also include the ground in dispute, now occu-

pied by the steps and railing on the south side of this building. The city claims by this evidence that the ground occupied by these steps and railing is a part of the street, both on the south side and the west side.

It is conclusive from the evidence that the ground in dispute was not within the boundaries of the streets as dedicated by the Young plat. The eastern boundaries of the square and Wick avenue, as established by the Young plat, are sixty-four feet west of this building. Neither does it appear from the evidence that the city has ever used for street purposes the ground now occupied by these steps and included within the railing.

From this evidence the city has failed to establish either by dedication or use title to the ground upon which the plaintiff has built its steps. It rests its right to remove the steps on the fact that in measuring from the present west side of the street east, and from the square north, the number of feet stated in the Young plat, the ground in dispute is included within the width of the street.

The city claims its legal right to remove these steps and other obstructions from this piece of ground under Section 3714, General Code, which requires a municipality to keep its streets open and free from nuisance. But this section does not give the city any authority to interfere with private property unless it can show a right, for street purposes, to the ground upon which the claimed obstructions are located. The city has no more right to enter upon the property of another and remove a part of the structures thereon than has an individual.

From the evidence, plaintiff has occupied this

property for many more years than the statutory requirement to give plaintiff title by prescription. Granting that the city has a right to remove such obstructions from the public streets, yet it must appear before it can do so that the ground occupied by the obstructions is within the established boundaries of the public highway. It cannot act upon the weakness of the occupying claimant's title. The plaintiff by occupancy has shown a right to the possession of the ground upon which it has located these steps and railing sufficient to prevent the city from forcibly removing these obstructions therefrom.

The city must first assert its right to the possession of the land in dispute, for street purposes, by an action at law. Concededly, the city is out of possession at the present time, and it does not appear from the testimony that the city ever had possession of this strip of ground.

We then come to the question whether plaintiff by this action can enjoin the city from removing these steps.

The Supreme Court of this state in an early case, *Ross* v. *Page,* 6 Ohio, 166, used the following language:

"Where the trespass amounts to waste, going to the destruction of the estate, and producing an injury for which pecuniary compensation cannot be made, chancery may be called upon for its aid to stay the mischief by injunction."

This question has been before the courts in other jurisdictions: *Poirier* v. *Fetter,* 20 Kan., 47; *Wilson* v. *City of Mineral Point,* 39 Wis., 160; *Uren* v. *Walsh,* 57 Wis., 98, 14 N. W., 902; 1 High on In-

junctions, Section 702; *Wilson & Son* v. *Harrisburg*, 107 Me., 207.

The court in the opinion in the last abovementioned case, page 218, announces the following principle:

"But irreparable injury in the sense in which it is used in conferring jurisdiction on the courts of equity does not mean that the injury complained of is incapable of being measured by a pecuniary standard. Thus an appropriation of the land for another, constituting a permanent injury to and depreciation of the property, is an irreparable injury owing to the uncertainty of the measure of damages."

When a plaintiff has been in possession of property for more than the prescriptive period, a municipality will be prevented from interfering with the occupancy of the property, where such interference would result in irreparable injury to the present enjoyment of the property.

Where the party aggrieved is in possession he will be allowed to restrain such trespass as would result in irreparable damage in the event of refusing the relief. 1 High on Injunctions, Section 702.

A somewhat similar principle has been announced by our Supreme Court in the following cases: *McArthur* v. *Kelly*, 5 Ohio, 139; *Moorhead* v. *Little Miami Rd. Co.*, 17 Ohio, 340, and *Anderson* v. *Commissioners of Hamilton County*, 12 Ohio St., 635.

Our attention has been called by the city to the case of *Heddleston, Supervisor,* v. *Hendricks*, 52 Ohio St., 460. The claim is that this case sustains the right of the city to forcibly remove these steps.

This case would tend to sustain that right if the city had shown that the ground upon which these steps are located was within the dedicated street line, but as we read this case it is no authority to the officers having charge of a public highway to remove obstructions that are not within the established line of the highway.

To the same effect are the cases of *McClelland* v. *Miller,* 28 Ohio St., 488, and *Lane* v. *Kennedy,* 13 Ohio St., 42, relied upon by the city.

The plaintiff in its petition does not ask that judgment be entered in its favor finding it entitled to the possession of the ground in dispute. It only asks that the city and its officers be enjoined from removing the steps and other fixtures by force, and against its will.

The plaintiff has a right to such an injunction. The city cannot remove these obstructions until it first establishes its right to the possession of the ground in dispute by an action at law. A decree may be drawn in accordance with the above suggestions.

*Decree accordingly.*

Farr and Roberts, JJ., concur.