

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-11-1995

# McDaniels v Flick

Precedential or Non-Precedential:

Docket 94-1838

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"McDaniels v Flick" (1995). *1995 Decisions.* Paper 186.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/186

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


Nos. 94-1838 and 94-1935


FRANK MCDANIELS

v.

JAMES R. FLICK; JOHN M. FITZPATRICK;
FRANK C. HESS, JR.; JAMES P. GAFFNEY;
JOSEPH W. GATTINELLA; NANCY J. GILOLEY;
DEE M. GRANT; SHARON KREITZBERG;
JAMES J. MCCANN; BARBARA W. MOSS;
ALBERT T. OLENZAK; LUTHER H. SMITH;
ROBERT E. WELSH; DELAWARE COUNTY
COMMUNITY COLLEGE

Delaware County Community College,

Appellant


FRANK MCDANIELS

Appellant

v.

JAMES R. FLICK; JOHN M. FITZPATRICK;
FRANK C. HESS, JR.; JAMES P. GAFFNEY;
JOSEPH W. GATTINELLA; NANCY J. GILOLEY;
DEE M. GRANT; SHARON KREITZBERG; JAMES J.
MCCANN; BARBARA W. MOSS; ALBERT T. OLENZAK;
LUTHER H. SMITH; ROBERT E. WELSH;
DELAWARE COUNTY COMMUNITY COLLEGE


On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 92-00932)


Argued May 24, 1995

BEFORE:  GREENBERG, ROTH, and ALDISERT, Circuit Judges

(Filed: July 11,  1995)

Arlin M. Adams
Ralph G. Wellington (argued)
Nancy Winkelman
Schnader, Harrison, Segal &
Lewis
1600 Market Street
Suite 3600
Philadelphia, PA 19103

D. Barry Gibbons
Gibbons, Buckley, Smith, Palmer
& Proud
P.O. Box 229
Media, PA 19063

Attorneys for appellant-
appellee Delaware County
Community College and the
individual appellees

Richard A. Ash
Cletus P. Lyman (argued)
Michael S. Fellner
Lyman & Ash
1612 Latimer Street
Philadelphia, PA 19103

Attorneys for appellee-
appellant Frank McDaniels

OPINION OF THE COURT

GREENBERG, Circuit Judge.

## I. PROCEDURAL BACKGROUND

This matter is before this court on appeal by Delaware County Community College from orders denying its motions for judgment as a matter of law and on a cross-appeal by Frank McDaniels from orders dismissing the trustees of the college as

defendants and denying him a new trial on non-economic damages. The case arose as a result of McDaniels' discharge as a tenured professor at the college.

We describe the unusual procedural background of the case at length.[1] On February 13, 1992, McDaniels filed this action in the district court under 42 U.S.C. § 1983 against the college's Board of Trustees, individually and in their official capacity, and against the college. He charged that the defendants, in terminating his employment by reason of certain serious charges of misconduct made against him by a student at the college, violated his procedural due process rights under the United States Constitution. The student later was identified as John Federici.

In March 1992, the college filed a motion for summary judgment, which the district court denied without opinion. The college then unsuccessfully moved for reconsideration. In denying that motion, the district court explained that there was an issue of material fact as to whether McDaniels received notice of the charges or the purpose of the pretermination meeting before the meeting and whether he was informed of the specific accusations during the meeting.

---

[1]. The college also appeals from the denial of pretrial motions for summary judgment. In response McDaniels contends that in view of the verdict at the trial we cannot entertain the appeal from the denial of these motions. We do not address this point, however, for our conclusion that the college was entitled to judgment as a matter of law renders it moot.

After discovery, both sides moved for summary judgment. The court granted partial summary judgment on liability to McDaniels and thus denied the college's motion. On January 27, 1994, it started a jury trial on damages but, after hearing McDaniels' testimony, the court determined that there was a genuine issue of fact as to whether there had been a procedural due process violation. In a subsequent memorandum opinion explaining its reasoning, the court noted that actions taken after the pretermination meeting might show that McDaniels was aware of the specific charges and that he had an opportunity to respond to them. Consequently, the court concluded that it had granted McDaniels partial summary judgment improvidently. The court therefore offered McDaniels a choice between proceeding with the trial and proving liability as well as damages, or having the court declare a mistrial. McDaniels elected to have the court declare a mistrial. In a subsequent written opinion explaining why it had reached the foregoing conclusions, the court included a footnote stating that the trustees had been dismissed as defendants "sua sponte and without objection" because they had nothing to do with the pretermination events leading up to McDaniels' discharge.

The court divided the second trial into three separate sub-trials, which we shall call phases, with the first phase focusing on liability. At the close of McDaniel's case on this phase, which was also the close of all of the evidence as the college did not call any witnesses, both McDaniels and the college unsuccessfully moved for judgment as a matter of law

under Fed. R. Civ. P. 50(a). Then in response to specific questions, the jury returned a verdict that: (1) the college adequately notified McDaniels that the November 27, 1991 meeting was a pretermination hearing on Federici's sexual harassment charges; (2) the college informed McDaniels of the substance of the case against him during that meeting; but (3) McDaniels was not given a meaningful opportunity to respond and tell his side of the story. App. 1214-15. In view of the third finding, the college could be liable. In the second phase the jury determined that if McDaniels had been given an adequate opportunity to respond, the college would not have terminated his employment, presuming that it would have acted fairly and reasonably. App. 2171. Based on this verdict, the court entered an order reinstating McDaniels on the faculty and awarding him $134,081 in lost wages. Finally, in the third phase the jury found that McDaniels was not entitled to damages for non-economic harm. The court, nevertheless, awarded him one dollar on that claim for nominal damages. App. 2333.

The college then moved for judgment as a matter of law under Fed. R. Civ. P. 50(b). McDaniels filed a "conditional" post-trial motion for a new trial on the issue of damages. In opposing the college's motion, McDaniels contended that it was estopped from moving for judgment as a matter of law because the college's attorney in his closing argument at the third phase led the jury to believe that the college agreed to "make peace" with McDaniels and make him whole. The court, though not estopping the college, denied the post-trial motions on August 22, 1994.

The college then filed a notice of appeal, and McDaniels filed a notice of cross-appeal.

Thereafter, McDaniels moved in this court to dismiss the appeal and cross-appeal on the basis of the statements the college's attorney made during closing argument at the third phase. Essentially he contends, as he did in the district court, that the statements estop the college from seeking post-trial remedies. After he filed that motion in this court, the district court issued a memorandum opinion explaining the reason for its disposition of the post-trial motions, including why it had rejected McDaniels' judicial estoppel argument. We now deny the motion to dismiss the appeal and cross-appeal as we agree with the district court that the college's attorney's comments should not estop it from pursuing post-trial remedies.

On appeal, the college argues that the district court should have granted its motions for judgment as a matter of law. McDaniels cross-appeals from the district court's dismissal of his case against the individual defendants and from the denial of his post-trial motion for a new trial on non-economic damages. We will reverse on the college's appeal from the denial of its post-trial motion for judgment, will affirm on McDaniels' cross-appeal challenging the dismissal of the trustees, and will not reach McDaniels' argument seeking a new trial on non-economic damages.

## II. FACTUAL BACKGROUND

We set forth the facts, many of which are not in dispute, viewing them in a light most favorable to McDaniels.[2] McDaniels was a tenured professor at the college which is a public institution in Delaware County, Pennsylvania. In 1990, the college received complaints from two male students that McDaniels sexually harassed them. App. 1075-80. After investigating the reports, the college sent McDaniels a letter informing him that he had violated the school's sexual harassment policy. App. 1029-30. The letter warned McDaniels that "reoccurrence of such incidents will result in serious disciplinary action including termination of employment." App. 1030. McDaniels responded to these charges in writing and signed the college's letter to acknowledge that he had reviewed its contents. App. 1030-31, 1075-80.

In the summer of 1991, McDaniels taught a marketing class at the college. John Federici, who was one of the students in the class, had trouble with the course work and sought help from McDaniels. Due to various problems, including a final term paper that Federici handed in late, McDaniels gave him a "D" for the course.[3] App. 938. Federici needed at least a "C" in the course to transfer the credit for it toward a nearly completed degree from Pennsylvania State University. App. 746. According

---

[2]. We are generous to McDaniels in so viewing the facts because the college was the verdict winner at the first phase except on the third issue.

[3]. McDaniels first gave Federici a grade of "Incomplete." App. 935.

to McDaniels, Federici became irate and threatened to get him. App. 1017. McDaniels reported the incident to Assistant Dean Henry Jackson, McDaniels' supervisor at the time. App. 1017.

Federici also approached Jackson and complained that he disagreed with McDaniels' grading of his term paper. App. 934-36. Jackson contacted McDaniels after learning that Federici already had confronted McDaniels about the grade. App. 936-38. McDaniels told him that the term paper was not well done. App. 938. Jackson did not read the term paper. App. 947-49. Jackson then told McDaniels that Federici apparently misunderstood and that Jackson would contact him and explain the situation to him. App. 938-39. Jackson then called Federici, but when he could not make Federici understand McDaniels' position, he told Federici to contact McDaniels directly. App. 939. Federici refused, saying something to the effect of "I can't do that." App. 939. When Jackson pressed him, Federici said that he needed to talk to Jackson about another matter. App. 939-40. Federici told him that McDaniels "always wanted to counsel [him]" and "always wanted to see [him.]" App. 940. Federici also told him that McDaniels talked to him about "tough love." App. 940-41. Jackson then asked if he was talking about sexual harassment. App. 941. Federici said he was and Jackson told him to discuss the matter with James Bryan, the college's Director of Personnel Services. App. 941.

On November 18, 1991, Federici met with Bryan. App. 736, 739. Federici told Bryan that he needed credits to transfer to Pennsylvania State University for his degree; he had problems

with McDaniels' class; he was seeing a counselor regarding anxiety and stress problems; and he had been involved in various incidents with McDaniels. App. 736-47. Bryan took notes of the conversation. App. 739. Bryan asked Federici to make a written statement regarding these allegations. App. 754. When Federici said that he would need help doing so, Bryan offered to compile his notes into a written statement for Federici to sign. App. 754. After their talk, Bryan composed a summary from his notes which Federici later reviewed and signed. App. 760-61. The summary, in relevant part, reads as follow:

> While in the library studying [John Federici] fell asleep & awoke to see [Frank McDaniels] who was massaging John's neck. John was taken by surprise & felt very strange that this would have happened. After that incident, [McDaniels] came into the library more & more as if he was looking for John.
>
> John was in the library on another occasion with his friend Tom & [McDaniels] came in to talk to them. [McDaniels] seemed to keep looking at the 'lower half' of John's body while he spoke. [McDaniels] did not make eye contact with John but continued to stare at his lower body.[4]
>
> John made an appointment to speak [with McDaniels] in [McDaniels'] office about the added class work to improve his grade. [McDaniels] repeatedly said he wanted to help John & counsel him. [McDaniels] asked if John had heard of tough love & John said no. With this, [McDaniels] proceed (sic) to say that he would help him & 'If I need to I will

---

[4]. Bryan testified that Federici also told him that after McDaniels left, Federici asked Tom if he noticed the way McDaniels was staring at him, to which Tom responded negatively and laughed. App. 781.

hug you, beat the crap out of you or put my penis in your mouth.' [McDaniels] reached over & put both of his hands on John's face & seemed to be about to cry & said, 'I really want to help you.' John backed away and was stunned to hear this.

Summer I ended & John got an 'Incomplete' for his marketing course. He reluctantly called [McDaniels] at [the college] to attempt to get the assignments necessary to get a grade for the course. [McDaniels] returned his call & made some 'sexual innuendo' remarks. [McDaniels] made an appointment to see John on campus. John was reluctant but needed to get an assignment to remove the 'Incomplete.'

At the appointment [McDaniels] discussed make-up work & repeating the final exam but then went into another description of the tough love thing with another explicit reference to sexual matters. [McDaniels] said to come back to his office later if he wanted to have help on matters external to class activities but if he did not return, [McDaniels] would know John didn't want help in these personal matters. [McDaniels] also said John should not discuss this with anyone since he could loose (sic) his job. [McDaniels] said he would 'get him' if he mentioned their conversations to anyone. [McDaniels] left the clear impression that the two of them could go somewhere off-campus 'in private' to work out these personal problems (sexual overtones were clear).

App. 258-61 (testified to at app. 763).

After his meeting with Federici, Bryan verified that Federici was a student in McDaniels' marketing course. He then alerted several officials at the college about the matter. App. 768-71. In particular Bryan discussed the situation with Dean Thomas McNicholas and asked Dr. Lois Ann Craig to determine

whether Federici had any record of unusual behavior.  App. 771–72.

On November 27, 1991, Bryan contacted McDaniels and told him to meet him in Bryan's office at 2:30 p.m. that afternoon and to bring along his grade book.  App. 787–88.  Prior to the meeting, McDaniels met Bryan and inquired about the reason for it.  App. 788–90.  Bryan told him only that it was about a "student problem" and he gave him no other information about the meeting.  App. 788–90; 983.  The meeting was held as scheduled with McNicholas, Bryan, and McDaniels present.

At the start of the meeting, Bryan told McDaniels that a student had lodged a sexual harassment complaint against him and that he and McNicholas would recommend McDaniels' termination.  App. 791, 982–83.  McDaniels testified that upon hearing Bryan's opening statement, he was "shocked, dismayed, . . . thrown offguard."  App. 983.  Bryan testified that he then told McDaniels "that the purpose of the meeting was to understand what the charge was, to have an opportunity for me to relay to him what the charges were specifically and for him to have a chance to respond."  App. 791.  McNicholas, the only other person at this meeting, confirmed this statement.  App. 915–16.  McDaniels testified that he "did not comprehend" that Bryan said explicitly that it was to be a "pretermination hearing."  App. 1072.  McDaniels explained, "Well, if they did say it, they said it in the same sentence whereby they said they were recommending my termination to the board of trustees.  If they did say it, they had blown my mind so bad at that point, they had disorganized me

-- disoriented me so much that I didn't remember them saying it, if they did say it." App. 1073. Bryan and McNicholas also testified that Bryan told McDaniels that he could adjourn the meeting at any time. App. 862, 916.

A few minutes into the meeting, Bryan informed McDaniels that Federici filed the complaint. App. 792-93, 851, 913-14, 1014. McDaniels became very upset upon learning this and left the room. App. 851, 914, 1014-18. After trying to collect himself, he returned and "was a little bit better," but was "still in a total state of shock" and "[didn't] even know what [he] said." App. 1018. McDaniels told them that Federici had threatened earlier to "get" him. App. 794, 853. McDaniels told Bryan and McNicholas that Federici had emotional problems, Federici's parents were aware of this, and McDaniels had made Dean Jackson aware of this as well. App. 794-95, 859-60, 918. Bryan and McNicholas recalled McDaniels as having said that he knew Federici's parents and had talked to them. App. 794, 859. McDaniels testified, however, that "If I did say that, I was in panic," and that he did not know them, and meant to say that they must have known that Federici had emotional problems. App. 1025-26. Bryan and McNicholas agreed to talk to Jackson and Federici's mother. App. 865. Bryan and McNicholas also testified that McDaniels asked them if he could save his job if he agreed to seek counselling. App. 858.

During the pretermination hearing, Bryan discussed Federici's allegations but he did not read or show the written summary to McDaniels. App. 802, 1018. It is unclear whether

Bryan described Federici's allegations in a direct manner. However, Bryan asked McDaniels several questions relating to them. App. 1019-21. Bryan asked whether McDaniels touched Federici's neck or face in the library. App. 1019. McDaniels responded that he had not, but might have, and recalled an incident in which Federici was sitting when he walked into the library and saw him. App. 917, 1019-20. Bryan asked whether McDaniels had stared at the lower part of Federici's body in the library, in the presence of another student. App. 1020. McDaniels denied this. App. 1020. Bryan also asked whether McDaniels had talked to Federici about "tough love." App. 854, 915, 1020. McDaniels said that Federici initiated that topic. App. 1020. Bryan testified that he also asked McDaniels about the sexually explicit remark quoted by Federici and about the alleged warning by McDaniels for Federici to keep quiet about their conversations. App. 854, 856. McDaniels, however, denied that Bryan ever mentioned these two points. Bryan also brought to McDaniels' attention his previous reprimand for sexual harassment, showing him the warning letter. App. 856, 1029. McDaniels told Bryan and McNicholas that the sexual harassment allegations regarding Federici were not true.

Bryan and McNicholas testified that Bryan told McDaniels that he should contact Bryan if he thought of any other matters, and that he had available various options to deal with these charges under his collective bargaining agreement with the college, the college's sexual harassment policy, and the Pennsylvania Local Agency Law, including an appeal to the

president of the college.  App. 861-63, 915.  McDaniels did not recall any of this.  App. 1091.

As agreed, Bryan contacted Federici's parents.  In particular Bryan had a telephone conversation with Federici's mother, who told him that she did not remember talking to McDaniels.  App. 797.  McNicholas met with Jackson and asked whether McDaniels had told him that Federici was "off the wall" or "crazy" and Jackson answered "no."  App. 920.

Subsequently, Bryan sent McDaniels a letter, dated December 4, 1991, informing him that Bryan had investigated the matter and would recommend that the Board of Trustees terminate McDaniels' employment for sexual harassment.  App. 804.  The letter also advised McDaniels of his post-termination rights:

> As I mentioned during the pre-termination meeting last Wednesday, you may want to have the [Board of Trustees'] action heard through the grievance procedure as provided under the terms of the collective bargaining agreement or you may elect to have a hearing before a committee of the Board of Trustees.

App. 246 (testified to at app. 803-04).  Bryan sent McDaniels another letter, dated December 9, 1991, which said briefly:

> Consistent with procedures in Regulation 63.03, page 12 of the College Policy Manual, I am writing to inform you that you may exercise your right to request a further review and investigation by the President of the College or his designee on the matter of the sexual harassment complaint lodged against you.  You have five (5) days to file this request.
>
> Please phone me should you have any questions on this matter.

App. 248 (testified to at app. 804, 1045).

McDaniels wrote to the college's president, Richard D. DeCosmo, on December 12, 1991, to request that DeCosmo investigate the sexual harassment charges. App. 1051. McDaniels indicated in the letter that he has "formally filed a grievance with the intent of going all the way through the grievance procedure (arbitration) & beyond to civil action to avoid termination." App. 165, 2352-53 (testified to at 1052-53). McDaniels testified, however, that at the time of the letter, he had not begun the grievance procedure but was only "looking into" it. App. 1093-94. McDaniels also wrote:

> Enclosed is a chronologized transcript of my total contact with this student. I emplor (sic) you to thoroughly investigate his alligations (sic) personally & overturn the termination decision. . . .
>
> . . . I would be most happy to visit you & go over cronology (sic) of contact with John Federici from first meeting to last confrontation spanning May 23, 1991 to October 22, 1991. Every single meeting was for class business only.

After receiving this letter, DeCosmo reviewed the documents relating to this matter, and met with Bryan, McNicholas, and Jackson to review their investigations and findings. App. 1126. On December 18, 1991, DeCosmo wrote the following to McDaniels:

> I am satisfied that there has been a thorough review of the matter in question. I do not believe further review is necessary. The recommendation to terminate your employment for violation of the College's sexual harassment policy will be presented to the

Board of Trustees at their meeting on December 18.

App. 250 (testified to at app. 1102).

At the Board of Trustees' meeting on December 18, 1991, the Board voted unanimously to terminate McDaniels' employment. McDaniels did not appeal to or ask for a hearing by the Board of Trustees. Nor has he pursued the matter in state court. Instead, he began arbitration procedures as provided for by the collective bargaining agreement. Before the parties completed selection of the arbitrators, however, McDaniels filed this action. Consequently, the arbitration proceedings have been stayed pending its disposition.

## III. JURISDICTION

The district court had jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights). We have jurisdiction under 28 U.S.C. § 1291 over the final orders entered by the district court.

## IV. DISCUSSION

### A. Judgment as a Matter of Law

The college made a motion for judgment as a matter of law based on Fed. R. Civ. P. 50(a) at the close of McDaniels' case in the first phase, which was also at the close of all the evidence, and a motion for judgment as a matter of law under Fed. R. Civ. P. 50(b) after completion of all three phases. The

district court denied both motions, and the college appeals from both denials.

We exercise plenary review over the district court's denial of the college's motions for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a) and 50(b). Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1166 (3d Cir. 1993), sets forth the standard we follow when considering a defendant's motion for judgment as a matter of law:

> Such a motion should be granted only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability. In determining whether the evidence is sufficient to sustain liability, the court may not weigh the evidence, determine the credibility of witnesses, or substitute its version of the facts for the jury's version.

Id. (citations omitted). A review of the record leads us to conclude that the jury verdict to the extent unfavorable to the college at the first phase is not supported by legally sufficient evidence and that the college should have been granted a judgment as a matter of law.

The parties agree that the starting point of the resolution of this procedural due process dispute is Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487 (1985). In Loudermill, two discharged school district employees sued their former employers for deprivation of liberty and property interests without due process in the pretermination procedures. The Supreme Court held that the district court erred in

dismissing the complaints. The Court first confirmed that under applicable Ohio law, the plaintiffs had property rights in continued employment. Id. at 538-39, 105 S.Ct. at 1491. Then, in determining "what process is due," Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600 (1972), the Loudermill Court began with the long-standing precept that "[a]n essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" Loudermill, 470 U.S. at 542, 105 S.Ct. at 1493 (citing Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313, 70 S.Ct. 652, 656-57 (1950)). The Court reiterated the settled rule that due process "requires 'some kind of a hearing' prior to the discharge of an employee who has a constitutionally protected property interest in his employment." Id. (citing Board of Regents of State Colleges v. Roth, 408 U.S. 564, 569-70, 92 S.Ct. 2701, 2705 (1972); Perry v. Sindermann, 408 U.S. 593, 599, 92 S.Ct. 2694, 2698 (1972)). The Court noted that one essential component of due process, was a pretermination opportunity to respond. Id.

Having said that, the Court went on to point out that "the pretermination 'hearing,' though necessary, need not be elaborate." Id. at 545, 105 S.Ct. at 1495. Rather, "'[t]he formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings.'" Id. (quoting Boddie v. Connecticut, 401 U.S. 371, 378, 91 S.Ct. 780, 786 (1971)). Thus, after balancing the interests of public employees and employers,

the Court held that "[t]he tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story."  Id. at 546, 105 S.Ct. at 1495.  The Court concluded that "all the process that is due is provided by a pretermination opportunity to respond, coupled with post-termination administrative procedures as provided by the Ohio statutes."  Id. at 547-48, 105 S.Ct. at 1496.

The parties agree that under Loudermill McDaniels had a constitutionally protectible property interest in continued employment as a tenured professor at the college.  Loudermill therefore provides the guidelines for "what process is due." Morrissey v. Brewer, 408 U.S. at 481, 92 S.Ct. at 2600.  The question then is whether the college satisfied its obligations under these guidelines.

After the closing of the first phase of the trial, the district court charged the jury in relevant part:

> Being a tenured professor at a community college he was a public employee with a property interest in his job.  The law is that such an employee is entitled to the notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story.  And this entire process is known as a pre-termination hearing.

> The notice may be written or oral, that is spoken.  It need not be advance notice, that is a pre-hearing notification.  In other words, the notice of the charges may be given at the hearing itself.  The hearing can be informal . . . .  It is not required to be a full hearing before the final decision maker.

. . .

> The employee need not be informed as to all of the evidence, but at least the substance of it.  He must be given the opportunity to respond to the charges, and for that opportunity to be meaningful he must know the substance of the case that the employer has against him.  This enables the employee to make any plausible arrangements that might prevent the termination. . . .

> In deciding whether Mr. McDaniels was given the opportunity to respond, you may consider what you decide occurred at the meeting on November 27, 1991, and also what occurred thereafter, prior to his termination on December 18th.  If you decide that under all the circumstances that Mr. McDaniels was substantially unable to respond, either at the meeting or before December 18, and that his inability to do so was caused by the conduct of the college's representatives, then it could not be said that he had the opportunity to respond to the charges.

App. 1200-03.  The jury found that the college, through Bryan, did notify McDaniels "that the meeting on November 27, 1991 was a pre-termination hearing based on the sexual harassment charges of John Federici;" at that meeting Bryan did inform McDaniels as to the substance of the case against him; but McDaniels was not given a meaningful opportunity to respond and tell his side of the story.  App. 1214-15.

On appeal, the college does not quarrel with the foregoing charge.  But McDaniels appears to argue that, as a tenured professor who had been teaching at the college for 20 years, he deserved more protection than those set forth in Loudermill.  We disagree.  The Loudermill Court balanced the competing interests of the employer and the employee in deriving

the pretermination requirements.  In determining whether the Loudermill standard should apply here, we must consider the interests of McDaniels versus those of the college and the students.

It is true that McDaniels has a property interest in his continued employment and perhaps a liberty interest in clearing his reputation of sexual harassment charges.  But McDaniels appears to argue that because he is a professor and has been at the college for 20 years, his property interest in continued employment is constitutionally greater than those held by the employees in Loudermill.  Yet he has not offered any basis on which we could or should distinguish reasonably between the interest of a tenured employee who has worked 20 years and the interest of one who has worked only one year for the same employer and we can conceive of no principled way to distinguish between the two.  Arguably, the interest in continued employment may be greater for younger employees who have started only recently because they have potentially more years of employment ahead.

McDaniels claims that "[u]nlike ordinary public employees, the rights of professors to teach, free from arbitrary discharge by administrators, implicates the societal value of academic freedom.  Tenure is the pillar upon which academic freedom rests."  Br. at 34.  Although this assertion may be true, it is not material in this case.  Inasmuch as the college did not discharge McDaniels in retaliation for his exercise of First Amendment rights, this case does not implicate free speech

issues.  Indeed, in his complaint McDaniels does not refer to the First Amendment.  Rather, we are concerned with the minimum process due under the Constitution to protect property rights in public employment.

McDaniels also cites Skehan v. Board of Trustees of Bloomsburg State College, 669 F.2d 142, 152 (3d Cir.), cert. denied, 459 U.S. 1048, 103 S.Ct. 468 (1982), for the proposition that college professors deserve more process than the run-of-the-mill, Loudermill-type employee.  In Skehan, we adhered to our earlier decision in Chung v. Park, 514 F.2d 382 (3d Cir.), cert. denied, 423 U.S. 948, 96 S.Ct. 364 (1975), where we stated that pretermination safeguards due to tenured professors

> may include: (1) written notice of the
> grounds for termination; (2) disclosure of
> the evidence supporting termination; (3) the
> right to confront and cross-examine adverse
> witnesses; (4) an opportunity to be heard in
> person and to present witnesses and
> documentary evidence; (5) a neutral and
> detached hearing body; and (6) a written
> statement by the fact finders as to the
> evidence relied upon.

Chung, 514 F.2d at 386 (emphasis added).  Nevertheless, neither Skehan nor Chung announced that due process required all six of these steps in cases involving tenured professors.  In both cases, we did not reach that issue because the colleges provided all six.  And neither case based the listed due process safeguards on the distinguishing fact that the employees were professors and therefore were entitled to extra protection in the name of academic freedom.  In any event, both cases were decided

before Loudermill.  Inasmuch as Loudermill sets the minimum due process pretermination requirements where state procedure also provides, as it does here, substantial post-termination safeguards, Loudermill defines the minimum due process requirements for this case.  We further note that in Skehan we did not even consider the post-termination remedies, if any, as later required by Loudermill.  And in Chung, although certain post-termination remedies were available, see 514 F.2d at 385 n.3., we did not consider them in reaching our result.  In fact, we held that some of the six enumerated steps may be provided after termination, and decided that the professor was not entitled to a hearing prior to termination.  Id. at 387.

In considering the interests of the college, we note that it, as much as a professor, has a great interest in preserving its reputation.  Moreover, the college had adopted a policy of protecting its students from the types of behavior charged against McDaniels.  We also need to consider the interests of the alleged victim of the sexual harassment.  If the charges are well founded, the complainant should be protected against possible retaliation and threats.

In sum, we conclude that only the Loudermill pretermination requirements were required here.  We therefore find that the trial court's instructions that due process required the college to provide McDaniels with notice and explanation of the charges and an opportunity to respond were correct.  See, e.g., Bradley v. Pittsburgh Bd. of Educ., 913 F.2d 1064, 1077-78 (3d Cir. 1990) (suspension without pay also

requires prior notice and hearing); Copeland v. Philadelphia Police Dep't, 840 F.2d 1139, 1144–46 (3d Cir. 1988) (suspension complied with due process where interview was held which notified employee of charges, allowed him to explain, and notified him of suspension), cert. denied, 490 U.S. 1004, 109 S.Ct. 1636 (1989); Gniotek v. City of Philadelphia, 808 F.2d 241, 244 (3d Cir. 1986) (no advance notice of the pretermination hearing is required; "Notice is sufficient, (1) if it apprises the vulnerable party of the nature of the charges and general evidence against him, and (2) if it is timely under the particular circumstances of the case."), cert. denied, 481 U.S. 1050, 107 S.Ct. 2183 (1987).

The college argues that McDaniels was given notice of the hearing and the charges against him, an adequate explanation of its evidence, and an adequate opportunity to present his side of the story. The college points out that McDaniels had various post-termination remedies, including a hearing before the Board of Trustees, arbitration, and an appeal to the state court. Finally, the college argues that the verdict should be overturned because the jury's finding that McDaniels did not have a meaningful opportunity to respond cannot be squared with evidence indisputably showing that McDaniels in fact did respond to the charges.

We agree with the college that, in light of the undisputed evidence regarding the timing of the relevant events, the jury's conclusion that he was not given a meaningful opportunity to respond and to tell his side of the case cannot stand. McDaniels received adequate notice of the nature of the

November 27, 1991 meeting, and an explanation of the substance of the case against him. Given this background, the time between his November 27 meeting with Bryan and McNicholas and the December 18 Board meeting was adequate as a matter of law for him to make an appropriate pretermination response. Indeed, not only did Bryan and McNicholas ask for and receive McDaniels' responses during the November 27 meeting, but the correspondence shows that he was encouraged to respond further and did so. In fact, Bryan's December 9, 1991 letter informed McDaniels that he could request a review prior to termination by the president of the college. DeCosmo's actions in reading and answering McDaniels' letter showed that the college did not refuse him an opportunity to respond.[5] Finally, the facts that McDaniels did respond to the charges during the pretermination meeting by essentially denying them and attributing the charges to Federici's emotional problems, and by writing to DeCosmo after the meeting, conclusively established that, contrary to the verdict, the college gave him a meaningful opportunity to respond and to tell his side of the story before termination. Thus, if the jury's findings as to the first two questions are upheld, its third finding cannot stand.

In response to the college's arguments, McDaniels maintains that he did not receive timely and adequate notice, an adequate explanation of the specific allegations, or a meaningful

---

[5]. Of course, the fact that they did not accept his responses is irrelevant for purposes of determining whether his procedural due process rights were offended.

opportunity to respond, though he does not ask that the verdicts adverse to him on the first two issues be set aside. McDaniels contends that the notice given him was insufficient because it was not provided until the beginning of the pretermination meeting. We have held, however, that "advance notice is not required." Gniotek, 808 F.2d at 244. In Copeland v. Philadelphia Police Dep't, 840 F.2d 1139, 1142-46, we held that procedural due process was met where a policeman was told that he had tested positive for illegal drug use, was allowed to respond, and was told that he would be suspended with intent to dismiss, all in the course of a single interview.

Second, McDaniels contends that he did not receive adequate notice and explanation of the charges against him because he was not told or given the exact allegations made by Federici. In this regard, it is not disputed that the written summary of Federici's allegations was not given or read to McDaniels before his termination. We have held, however, that pretermination notice of the charges and evidence against an employee need not be in great detail as long as it allows the employee "the opportunity to determine what facts, if any, within his knowledge might be presented in mitigation of or in denial of the charges." Gniotek, 808 F.2d at 244; see also Derstein v. Kansas, 915 F.2d 1410, 1413 (10th Cir. 1990) (fact that employee did not know of all relevant facts and was not given copy of investigation transcript is insignificant), cert. denied, 499 U.S. 937, 111 S.Ct. 1391 (1991). Nor is it disputed that Bryan asked McDaniels specific questions about Federici's allegations

and that McDaniels replied to the questions.  The only dispute, then, is whether this session put McDaniels on sufficient notice of the charges against him so he could respond meaningfully and on this point the verdict is unassailable.

Thus, given that, for the reasons we already have stated, McDaniels received adequate notice and a sufficient explanation of the charges against him, it must be concluded that he also was given an adequate opportunity to respond.  McDaniels places great emphasis on his state of mind during the pretermination meeting.  In essence, he argues that by not giving him prior notice of the reason for the meeting, he was placed into a state of shock and was unable to respond when Bryan told him he was being charged with sexual harassment and might be terminated.  Though we do not decide the point, this contention might have been reasonable if he had been dismissed at the end of meeting, which only lasted about an hour.  See, e.g., Adams v. Sewell, 946 F.2d 757 (11th Cir. 1991).  But that was not the case here.  Several weeks elapsed between the pretermination meeting and the Board of Trustees' meeting at which he was terminated. Bryan informed him that he could appeal to DeCosmo, which he did. We need not determine today what amount of time for "cooling off," if any, must be allowed for an employee to respond to charges because the facts show that McDaniels had ample time to collect himself.[6]  Indeed, the record demonstrates that he

_____

[6].  We are not holding that any delay beyond the pretermination hearing is required for a response.  Thus, this case does not cast doubt on the general practice reflected in the cases of

consulted an attorney[7] and sent a written response to DeCosmo before the December 18 meeting.

Derstein v. Kansas, 915 F.2d 1410, supports our conclusion that the elapse of time between the November 27 and the December 18 meetings requires that judgment as a matter of law be entered in favor of the college.  Indeed, Derstein is remarkably similar to this case on the facts.  In that case the public employer received information that a tenured employee was sexually harassing other employees.  As a result, he was directed to appear at a meeting with persons responsible for his employment.  He was not informed of the purpose of the meeting before it started but at the meeting he was advised of the sexual harassment charges and given ten days to resign or be terminated. He also was told he could appeal.  At the end of the ten days the employee was given a termination letter which described the appeal rights and which advised him of the charges against him. He appealed but the appeal board dismissed his appeal as frivolous.  Following a bench trial, the district court found that the employee's pretermination rights had been violated and thus it entered judgment for him.

The court of appeals reversed.  Of particular interest here, it emphasized that the employee "was not terminated at the

(..continued)
terminating an employee at the pretermination hearing.  Our opinion simply reflects what happened here.

[7]. McDaniels testified that he talked to his union's attorney after the pretermination meeting.  App. 1095.  In addition, his letter to Cosmo indicated that he was withholding copies of the letter from Federici "on advice of attorney."  App. 2253.

meeting but given ten days to respond" and "[h]e was given ten days before termination." Id. at 1413. McDaniels had even more time to respond than the employee in Derstein and he did respond after the November 27 meeting.

Finally, McDaniels argues that the district court should have granted him judgment as a matter of law because the college's termination procedure violated Pennsylvania Local Agency Law. This argument flies in the face of both logic and law. His complaint charged that the college violated McDaniels federal constitutional rights to procedural due process. The question of whether an employee has a property right in continued employment is a question of state law. Board of Regents of State Colleges v. Roth, 408 U.S. at 577, 92 S.Ct. at 2709. But the determination of "'what process is due' . . . is not to be found in [state statutes]." Loudermill, 470 U.S. at 541, 105 S.Ct. at 1493 (citation omitted). Rather, it is a question of federal constitutional law. See Vitek v. Jones, 445 U.S. 480, 491, 100 S.Ct. 1254, 1263 (1980) (minimum requirements of procedural due process are "a matter of federal law" and "are not diminished by the fact that the State may have specified its own procedures that it may deem adequate"). Purported violations of state law are not germane here.

In reaching our result we take note of Judge Aldisert's contentions in his dissent that the college denied McDaniels procedural due process of law. He predicates this contention on his conclusions that the notice of the pretermination hearing was constitutionally inadequate and that McDaniels did not have an

opportunity to prepare a meaningful defense to the charges. Judge Aldisert relies principally on Morton v. Beyer, 822 F.2d 364 (3d Cir. 1987), in reaching his conclusions.

Our opinion to this point adequately responds to Judge Aldisert's contentions except that we have not mentioned Morton v. Beyer which we thus now address. In Morton v. Beyer at the pretermination hearing the employee was suspended without pay. 822 F.2d at 366. Thus, the proceedings at the hearing were critical because unless the employee's response then and there convinced the administrators not to take action, and it did not, the employee forthwith would suffer a serious adverse employment action. Here, unlike the plaintiff in Morton v. Beyer, McDaniels does not allege that he was suspended without pay at the pretermination hearing. Rather, his complaint is that the trustees unlawfully discharged him on December 18, 1991. Accordingly, McDaniels quite logically did not sue Bryan and McNicholas, he sued the trustees. Therefore, Morton v. Beyer is completely distinguishable from this case and it is not controlling here.

## B. Preclusion from Showing that Pretermination Hearing was a Sham

McDaniels also argues that the district court erred in refusing to allow him to show at trial that the pretermination procedure afforded him was a sham. Essentially, McDaniels' theory is that the college administrators never believed Federici's allegations to be true. Instead, he charges that they

pounced on Federici's complaint to get rid of a highly paid professor to save money. The district court, relying in part on a recent case from the Court of Appeals for the Eleventh Circuit, McKinney v. Pate, 20 F.3d 1550 (11th Cir. 1994) (in banc), cert. denied, 115 S.Ct. 898 (1995), ruled that even if proven, the fact that the proceedings were a sham would be irrelevant to the claim that pretermination procedural due process was denied because the sufficiency of post-termination protection was not at issue. App. 1005-10.

Although due process requires an impartial decisionmaker before final deprivation of a property interest, Schweiker v. McClure, 456 U.S. 188, 195, 102 S.Ct. 1665, 1670 (1982), it is not clear that strict impartiality is required at each stage of the process. In situations as the one at hand, there are two stages, pretermination and post-termination, but normally the post-termination proceedings conclusively determine the employee's status. The pretermination hearing merely serves as "an initial check against mistaken decisions--essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." Loudermill, 470 U.S. at 545-46, 105 S.Ct. at 1495 (citations omitted).

We have not decided the specific question of whether, in the employment termination context, an impartial decisionmaker is required at the pretermination hearing. In Rosa v. Resolution Trust Corp., 938 F.2d 383, 396-97 (3d. Cir.), cert. denied, 502 U.S. 981, 112 S.Ct. 582 (1991), however, we touched upon a

similar issue in another context.  Rosa involved a pension plan of a bank placed under the conservatorship of the Resolution Trust Corporation (the "RTC").  At first, the RTC decided to continue the plan and assumed payment obligations.  But after two contribution payments, the RTC decided to halt contributions and it sent out notices that the plan was to be terminated in two months.  The beneficiaries of the plan sued.  Under the Financial Institutions Reform and Recovery Enforcement Act, however, certain of the plaintiffs' claims for monetary relief had to be presented first to the RTC for review.  The plaintiffs argued that this claims procedure violated due process because the RTC was biased as it had a financial interest in the determination of their claims.  We held that the alleged bias did not violate due process because, after exhaustion of the RTC claims procedure, the plaintiffs would have the post-deprivation option of obtaining a de novo court evaluation of their claims.  938 F.2d at 397.  Our holding in Rosa is consistent with the approaches taken by other circuits in resolving this issue in the employment termination context.

In McKinney v. Pate, cited by the district court, a county official challenged the procedures of his termination, alleging that the Board of County Commissioners, who made the preliminary decision to terminate his employment, "was preordained to find against him, regardless of the evidence." McKinney, 20 F.3d at 1561.  The court of appeals in banc, stated that "[a] demonstration that the decisionmaker was biased . . . is not tantamount to a demonstration that there has been a denial

of procedural due process." McKinney, 20 F.3d at 1562. The court reasoned that the employee was entitled also to a post-termination hearing and would not be deprived of due process "unless and until the state refuses to provide due process." Id.

The court held:

> [I]n the case of an employment termination case, 'due process [does not] require the state to provide an impartial decisionmaker at the pre-termination hearing. The state is obligated only to make available "the means by which [the employee] can receive redress for the deprivations."' Schaper v. City of Hunstville, 813 F.2d 709, 715-16 (5th Cir. 1987) (quoting Parratt v. Taylor, 451 U.S. 527, 543, 101 S.Ct. 1908, 1917, 68 L.Ed.2d 420 (1981)) (footnote omitted).

McKinney, 20 F.3d at 1562. Other court of appeals have come to this same conclusion in cases where hearings are provided both before and after dismissal. See, e.g., Walker v. City of Berkeley, 951 F.2d 182, 184 (9th Cir. 1991) ("failure to provide an impartial decisionmaker at the pretermination stage, of itself, does not create liability, so long as the decisionmaker at the post-termination hearing is impartial"); Duchesne v. Williams, 849 F.2d 1004, 1005 (6th Cir. 1988) (in banc) (Loudermill does not require a "neutral and impartial decisionmaker" at the pretermination hearing but only "a right of reply before the official responsible for the discharge"), cert. denied, 489 U.S. 1081, 109 S.Ct. 1535 (1989). Likewise, the Court of Appeals for the Fifth Circuit reached the same conclusion via an application of Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908 (1981), and held that even if allegations of bias

and conspiracy on the part of the decisionmaker were true, "the state cannot be expected to anticipate such unauthorized and corrupt conduct." Schaper v. City of Huntsville, 813 F.2d 709, 714-16 (5th Cir. 1987).

We find these cases convincing. First, as the Supreme Court has held, "[t]he constitutional [procedural due process] violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process." Zinermon v. Burch, 494 U.S. 113, 126, 110 S.Ct. 975, 983 (1990). The Zinermon Court held that part of the process that the State may offer to avoid constitutional violations is a remedy for erroneous deprivations. Id. Thus, a discharged employee cannot claim in federal court that he has been denied due process because his pretermination hearing was held by a biased individual where he has not taken advantage of his right to a post-deprivation hearing before an impartial tribunal that can rectify any possible wrong committed by the initial decisionmaker.

We also find most persuasive the application of Parratt v. Taylor, 451 U.S. at 527, 101 S.Ct. 1908, to claims that pretermination decisionmakers were not impartial. In Parratt v. Taylor, a prisoner claimed violation of his procedural due process rights because the mail-ordered hobby kits for which he had paid disappeared after their delivery to his prison. The Supreme Court first recognized that "either the necessity of quick action by the State or the impracticality of providing any meaningful predeprivation process, when coupled with the

availability of some meaningful means by which to assess the propriety of the State's action at some time after the initial taking, can satisfy the requirements of procedural due process." Parratt v. Taylor, 451 U.S. at 539, 101 S.Ct. at 1915 (footnote omitted).  The Court held that the prisoner failed to make out a procedural due process claim.  The Court reasoned that the nature of this deprivation, "a tortious loss [resulting from] a random and unauthorized act by a state employee," makes it difficult if not impossible for the State to hold a meaningful hearing before the deprivation.  Id. at 541, 101 S.Ct. at 1916.  The Court held that in such instances post-deprivation remedies such as tort laws are adequate.

This reasoning applies equally well in the employment termination context.  Usually, an employment termination decision is made initially by the employee's direct supervisor or someone working in the same organization as the employee -- a sensible approach given that such person often is already familiar with the employee's abilities and shortcomings as well as the needs and interests of the employer organization.  Yet, these individuals are also likely targets for claims of bias or improper motive simply because of their positions.  For example, personality discord may lead to charges that a direct supervisor was biased.  Or, as here, budget squeezes may lead to charges that the motivation for the dismissal was to trim the budget.  While these charges may have merit in certain cases, to require that the state ensure an impartial pretermination hearing in every instance would as a practical matter require that

termination decisions initially be made by an outside party rather than the employer as charges of bias always could be made following an in-house discharge.  Not only is this procedure unduly cumbersome, but it also may be unreasonably invasive for the employee, who may want to keep the circumstances of his discharge private.  On the whole, we do not think that such excessive pretermination precaution is necessary where the state provides a neutral tribunal at the post-termination stage that can resolve charges of improper motives.

Here, the parties agree that the college is a "local agency" subject to Pennsylvania Local Agency Law.[8]  Under sections 752 and 754 of the Local Agency Law, 2 Pa. Cons. Stat. Ann. §§ 752 & 754 (Supp. 1994), McDaniels had the right to appeal the college's decision to the state court.  See Monaghan v. Board of Sch. Directors of Reading Sch. Dist., 618 A.2d 1239, 1241 (Pa. Commw. Ct. 1992).  Under section 754, a court may hold a de novo hearing "[i]n the event a full and complete record of the proceedings before the local agency was not made."  Moreover, the court may modify or set aside an agency decision if it finds violations of the employee's constitutional rights, an error of law, or that necessary findings of fact were not supported by substantial evidence.  Id.; see also Coyle v. Middle Bucks Area Vocational Technical Sch., 654 A.2d 15, 16 (Pa. Commw. Ct. 1994); Springfield Sch. Dist. v. Shellem, 328 A.2d 535, 537-38 (Pa.

---

[8].  Pennsylvania statute defines "local agency" as "[a] government agency other than a Commonwealth agency."  2 Pa. Ann. Stat. Ann. § 101 (Supp. 1994).

Commw. Ct. 1974).  Clearly then, even aside from McDaniels' options in his union contract, which procedures he in fact initiated, the state offered him sufficient process to protect his property rights.

### C.  Denial of New Trial on Non-Economic Damages

As we find that the college did not violate McDaniels' procedural due process rights, we need not reach the question raised on his cross-appeal as to whether the trial court erred in denying his motion for a new trial on non-economic damages.

### D.  Dismissal of Individual Defendants

In a memorandum opinion, the district court noted that it had dismissed, sua sponte and without objection, the case as to the individual defendants because they had nothing to do with the pretermination events leading to McDaniels' discharge.  There has been some confusion as to the resolution of this issue because McDaniels states that he did not agree to the dismissal and an order of dismissal was not entered until June 28, 1994, which was several months after the dismissal at the aborted trial.  When the case was retried, McDaniels' attorney brought up this point and the court adhered to its ruling.  App. 703-04.  In his cross-appeal, McDaniels challenges this dismissal.

We exercise plenary review over the district court's dismissal of the individual defendants.  Alnor Check Cashing v. Katz, 11 F.3d 27, 29 (3d Cir. 1993).  We have some question as to whether the district court's reasoning was correct as the

trustees actually terminated McDaniels' employment.  However, in light of our conclusion that the college did not violate McDaniels' rights to procedural due process, we will affirm the dismissal of the individual defendants.  Inasmuch as the pretermination procedures did not violate McDaniels' rights, the individual defendants could not be liable.

### V.  CONCLUSION

For the above reasons, we will reverse the order denying the college's post-trial motion for judgment as a matter of law and will affirm the trial court's dismissal of the case as to the individual defendants.  We do not address the college's appeal from the order denying its motion made at the end of the McDaniels' case for a judgment as a matter of law as it is moot.  In sum, the consequence of our opinion is that this litigation is terminated in the federal courts with judgments in favor of all the defendants.

## McDANIELS v. FLICK
### No. 94-1838 & 94-1935

ALDISERT, Circuit Judge, Dissenting

Fundamental fairness is the hallmark of the procedural protections afforded by the Due Process Clause.  Here we must decide whether the pretermination procedures of Delaware County Community College comported with the requirements of due process.

In my view they did not.  I would affirm the judgment of the district court.  Accordingly, I dissent.

Prior to termination, a public employee with a property interest in continued employment must be afforded "a pretermination opportunity to respond, coupled with post-termination administrative [or judicial] procedures."  Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 547-48 (1985).  To ensure that the pretermination hearing is a meaningful one, the employee "is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story."  Id. at 546.

In this case, Professor McDaniels was not provided adequate notice of the subject or purpose of the November 27, 1991 meeting.  He was told only that he should bring his current gradebook and that it related to "a student problem."  App. Vol. II at 790-91, 868-70.  To be sure, advance notice is not a per se requirement of due process.  Gniotek v. City of Philadelphia, 808 F.2d 242, 244 (3d Cir. 1986).  Rather, as the majority correctly noted, "[n]otice is sufficient, 1) if it apprises the vulnerable party of the nature of the charges and general evidence against him, and 2) if it is timely under the particular circumstances of the case."  Id. at 244.  Thus, although advance notice is not required, "'the timing and content of notice ... will depend on appropriate accommodation of the competing interests involved.'"  Id. (quoting Goss v. Lopez, 419 U.S. 565, 579 (1975)).  I conclude that the "particular circumstances" in this case

required some form of advance notice.  See Morton v. Beyer, 822 F.2d 364, 369 (3d Cir. 1987).

In Morton v. Beyer, a corrections sergeant at a state prison was summoned to a pretermination hearing six months after the putative misconduct, in that case inmate abuse, although he was aware that an internal affairs investigation was initiated within a couple of days of the alleged incident.  On the morning of the hearing, the public employee received "vague" notice that the upcoming hearing had something to do with "a general allegation of inmate abuse."  822 F.2d at 370.  At the hearing itself, the employee was accompanied by his union representative and was provided a packet of materials containing the various investigative reports of the incident for his review and comment, to which the employee declined to respond at the advice of his representative.  We concluded:  "On the undisputed facts of this case, [the employee] was not afforded timely notice of the nature of the charges or the general evidence against him."  Id. at 371.

This case assumes a fortiori proportions.  First, although Professor McDaniels also was summoned months after the alleged incident, he was never aware that he was being investigated at any time prior to the pretermination hearing.  Second, McDaniels received notice more vague than that in Morton v. Beyer:  He was told less than two hours before the meeting only that he should bring his current gradebook and that it related to "a student problem."  App. Vol. II at 790-91, 868-70.  He was not informed that the upcoming meeting was intended to serve as a pretermination hearing or that it related to a student

complaint of sexual harassment.  Amazingly, this lack of notice was in keeping with the college's policy that the more serious the alleged incident, the less notice and information is provided.  App. Vol. II at 802-03.  Third, unlike the public employee in Morton v. Beyer, McDaniels was not accompanied by a representative and was not afforded the opportunity to review the investigative report or evidence against him, specifically a three-page hand-written summary composed by Bryan and signed by the complaining student.  Fourth, as part of the pretermination procedure the employee in Morton v. Beyer was provided a departmental hearing after the initial hearing, 822 F.2d at 367 n.1 & n.2, whereas Professor McDaniels, notwithstanding the availability of what the majority characterize as "post-termination rights," was refused further pretermination review or investigation when, at the suggestion of Bryan, he filed a written request for this additional safeguard from the president of the college.

Although I am satisfied that McDaniels' pretermination hearing afforded him, to some degree, an impromptu opportunity to hear some of the college's evidence and present his side of the story, clearly he was unable to mount a defense equivalent to the studied and prepared presentation levelled against him:

> In affirming the conclusion of the district court that [McDaniels] likely received an inadequate Loudermill hearing, we emphasize that we simply hold that, on the facts of this case, prior notice of the nature of the charges against [McDaniels] was required. Particularly in light of the significant lapse in time between the alleged improper conduct and the hearing in [Bryan's] office,

> [McDaniels] should have been provided
> sufficient time, at the very least, to
> recount the facts in his own mind and thus to
> prepare himself to demonstrate to [Bryan and
> McNicholas] that reasonable grounds to
> believe that the charges were true did not
> exist.

Morton v. Beyer, 822 F.2d at 371 n. 11.

The majority and I seem to agree that it is difficult to square the jury's finding that Professor McDaniels was afforded constitutionally adequate notice of the pretermination hearing and the charges against him with its finding that he was not afforded a constitutionally adequate opportunity to respond. With such an agreement is an implicit acknowledgement that notice and opportunity to be heard are inextricably bound.

Subsumed in the due process requirement of notice is the concept that the recipient will be afforded some opportunity to prepare a meaningful defense. In this case the fact that notice of the pretermination meeting was given, as found by the jury, was nevertheless insufficient to permit Professor McDaniels to defend against a serious charge of sexual harassment intentionally flung upon him out of the blue, as also found by the jury. Under my view of due process protection, notice of a meeting is meaningless unless the vulnerable party is permitted a realistic opportunity to mount a defense and respond accordingly.

To be sure, the jury found that Professor McDaniels received notice of the meeting. That is a question of fact which I will not disturb on review. As a matter of constitutional law, however, I believe that the notice failed to meet the

constitutional requirements of procedural due process. That is a question for the court and not for the jury.

Accordingly, I dissent.